EARLY, Appellant, vs. THE CHIPPEWA LOGGING COMPANY, Respondent.

*January 12 — February 1, 1887.*

*Sale of chattels: Logs and timber: Acceptance: When scaling conclusive.*

1. Where a contract for the sale of logs provides that the purchaser shall pay at one rate for good, sound, merchantable logs, and at another rate for inferior logs, a mere acceptance of the logs is not an acceptance of the entire lot as being good, sound, and merchantable, even though they are so marked by a scaler who was employed solely for the purpose of ascertaining the quantity, not the quality, of the logs.

2. Where the logs sold are scaled by a person mutually agreed upon, his estimate of the quantity and of the deductions to be made for defects is binding upon the parties unless impeached for fraud, mistake, prejudice, or neglect.

APPEAL from the Circuit Court for *Chippewa* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought to recover the contract price of a lot of logs which had been cut and put into the river by the plaintiff for the defendant. The logs were cut and delivered to the defendant by the plaintiff under a written contract, the material parts of which are as follows:

" This agreement made and entered into this 12th day of September, A. D. 1882, by and between *H. W. Early*, of Williamsport, Pa., of the first part, and the *Chippewa Logging Company*, a corporation of Eau Claire, Wis., of the second part, witnesseth, that the said first-named party, for and in consideration of the agreement hereinafter contained on the part of the second-named party, hereby agrees, during the logging season of 1882 and 1883, to cut, haul, and deliver to the second-named party, on the Elk river, in the county of Price and state of Wisconsin, about fifteen hundred thousand feet of good, sound, merchantable, white pine saw-logs, the same to be cut as directed by the second-named party, said logs to be cut as long as the timber will permit, and scale straight and sound, and none to be less than ten inches in diameter at the top end; the same to be cut from the timber now standing on the lands situate in the county of Price and state of Wisconsin, and described as follows, to wit,   . . .   In consideration whereof, the second party hereby agrees to pay the first-named party for said logs eight dollars per thousand feet according to the scale; the same to be paid at the time and in the manner following, to-wit:   One and 25–100 dollars per M. as fast as banked and scale-bills rendered; one and 25–100 dollars per M. when camp breaks; balance in four equal payments, one fourth July 1, one fourth August 1, one fourth September 1, and one fourth October 1, 1883.  It is mutually agreed, by and between the parties hereto, that in case the first-

named party shall neglect to furnish to the second-named party the statement of logs scaled and the other statements herein provided, then the second-named party may obtain such statements, or the information intended to be contained therein, at the expense of the first-named party.

"It is further mutually agreed by and between the parties hereto that the scaling of said logs shall be under the supervision of a competent person; and that all estimates of the contents of logs, for the purpose of this contract, shall be upon the basis of sixteen feet in length for each log. It is further mutually agreed that all logs banked from the said lands during the season of 1882 and 1883, which are acceptable to the second-named party, shall be marked with the second-named party's marks; and all such logs that do not come up to grade under this contract shall constitute a second class of logs, and shall be sold to the second-named party at a price per thousand feet relative to the first-class logs, considering size and quality. Said second-class logs shall be marked for a bark-mark thus, ' 1*1,' cut in the side of each log half way round; and for an end-mark thus, ' (C. L. Co.),' stamped at least five times in each end of each log. It is further mutually agreed that the second-named party shall take all logs that shall scale one-half merchantable."

The case was referred to a referee to hear, try, and determine the same. Upon the trial it was claimed by the plaintiff that the defendant, under the contract, was bound to pay him at the rate of eight dollars per M. for all the logs put in by him, without regard to the quality of the logs. On the part of the defendant it was claimed that the logs put in and delivered to the defendant were not " good, sound merchantable logs," as required by the contract, and that the company was only bound to pay eight dollars per M. for " good, sound, merchantable logs," and that there was not as large a quantity of logs as claimed by the plaintiff. Upon both these points a large amount of testimony was taken at

the hearing. It was also claimed by the plaintiff that if there was any defect in the quality of the logs delivered, so that they did not come up to the standard required by the contract, such defects were palpable, and that the defendant waived any objection to the quality of the logs by accepting the same.

. The learned referee, after hearing all the evidence, found that the plaintiff had put in the quantity of logs claimed by the plaintiff, as scaled by Fleming, a scaler appointed by the parties to do the scaling, and that there was not sufficient evidence to impeach the correctness of the scale of said Fleming, and that the parties had never agreed upon any person to supervise the scale made by Fleming, as provided in the contract. He also found that, after having examined the logs, the defendant made no objection to said logs as not acceptable under the contract until after they were all put in, marked, and delivered under the contract. He also found that all the logs put in by the plaintiff, viz., 1,848,640 feet, were accepted by the defendant "as good, sound, merchantable, white pine saw-logs," and were to be paid for at eight dollars per M. The referee says in his second conclusion of law that he "deemed it immaterial to find whether they were such logs as the defendant was bound to accept under the contract."

. The referee having made his report, on motion of the defendant the circuit court modified the findings of the referee in two very material respects: *First,* the learned circuit judge found that the scale of the logs made by Fleming had been impeached, and that the real quantity of logs put in by the plaintiff, after rejecting 98,120 feet as culls, was only 1,490,710 feet; and, *second,* he found that of this 1,490,710 feet only two thirds were good, sound, merchantable logs, as required by the contract, and the other one third was a poorer quality and worth only five dollars per M.; and, *third,* under the evidence, the receiving of the logs by the

defendant was no waiver of his right to insist that the logs
so received were not all of them "good, sound, merchant-
able logs" under the contract, for which he was bound to
pay eight dollars per M.; and he modified the findings in
these respects, and entered judgment on the report of the
referee so modified. Exceptions were duly taken by the
plaintiff, and from the judgment entered upon the modified
report of the referee he appeals to this court.

For the appellant there was a brief by *W. F. Bailey* and
*H. Richardson,* and oral argument by *Mr. Bailey.* To the
point that a scale made by a scaler mutually agreed upon is
conclusive unless impeached for fraud or mistake, they cited
*Busch v. Kilborne,* 40 Mich. 297; *Perkins v. Hoyt,* 35 id. 506;
*Ortman v. Green,* 26 id. 215; *Scott v. Whitney,* 41 Wis. 504;
*Smith v. Kelly,* 43 Mich. 390; *Tetz v. Butterfield,* 54 Wis.
242.

For the respondent there was a brief by *Marshall & Jen-
kins,* and oral argument by *Mr. Marshall.*

TAYLOR, J.    After a careful consideration of the terms of
the contract and the evidence in the case we are convinced
that the learned referee erred in finding that the defendant
had accepted the entire lot of logs as being " good, sound,
merchantable logs," within the meaning of the contract, and
which by its terms were to be paid for at eight dollars per
M.    It is clear, by the terms of the contract, the parties
contemplated that the plaintiff might and would cut and de-
liver logs which would not come within the class or grade
of "good, sound, merchantable logs" designated therein,
and it was also contemplated that the defendant should ac-
cept and pay for such poorer quality of logs at a price less
than eight dollars per M.    We think the last paragraph
of the contract makes this very clear.    The acceptance of
the logs by the defendant could not, therefore, bind it as to
the quality of the logs delivered or the price to be paid

Early vs. The Chippewa Logging Co.

therefor, even if they had been delivered without any kind of objection on the part of the defendant. We find nothing in the evidence, even on the part of the plaintiff, which clearly shows that the plaintiff insisted, before the delivery of the logs, that if taken by the defendant they should be taken and paid for at the rate of eight dollars per M. for the entire lot.

The fact that the logs were marked by the scaler, Fleming, with the mark designated in the contract as that which should be placed on the " good, sound, merchantable logs," was not conclusive upon the defendant on the question whether all the logs were of the quality called for in the contract to entitle the plaintiff to eight dollars per M. for them. This was a matter which was not submitted by the parties to the judgment of said scaler. He was appointed solely for the purpose of ascertaining the quantity of logs put in, and not the quality of them. We think the learned circuit judge was right in modifying the report of the referee in that respect.

On the other hand, we think the learned circuit judge erred in deciding that the estimate of the quantity of the logs delivered made by the defendant's witness McKay should be accepted as the true quantity, rather than that made by the scaler, Fleming. The evidence shows that Fleming was selected by the parties, under the contract, to scale the logs in the first instance. It also shows that he was a competent person to do such work, and his scale should bind the parties unless corrected in the manner provided in the contract or by the production of evidence clearly showing mistake or fraud in his scale. The provision in the contract in relation to scaling is as follows: " And [the plaintiff] further agrees to cause all of said logs to be scaled as fast as banked by a competent scaler to be mutually agreed upon; and on the first day of each month after logging operations commence to render to the second-

named party, at Chippewa Falls, Wisconsin, a statement in writing, certified by the scaler, which statement shall show the number of feet of logs, number of logs of each length, and average number of logs per thousand feet delivered up to the date of such statement; and further agrees to board the scaler, and pay his wages, except three cents per M., which the second party hereby agrees to pay." The only other provision in regard to the scaling of the logs bearing upon this question is found in the first clause of the last paragraph of the contract, and is as follows: " It is further mutually agreed by and between the parties hereto that the scaling of said logs shall be under the supervision of a competent person."

If this last provision has, as it is claimed by the defendant, relation to some other person than the scaler to be mutually agreed upon by the parties under the first provision above quoted, we think it clear, in order to bind the plaintiff absolutely by the estimates made by such supervising person, such person should also be mutually agreed upon. Otherwise the estimates of such supervisor would have no binding force upon the plaintiff, except as the testimony of a witness in the case tending to impeach the correctness of the sale made by the scaler provided for by the other clause of the contract. There is no evidence in the case tending to show that the plaintiff assented to the supervision of McKay. On the contrary, he expressly testifies that he objected to McKay acting as supervising scaler, on the ground that he was in the constant employ of the defendant. We do not think the plaintiff is to be bound by the estimates of McKay as to the quantity of the logs delivered, except so far as his testimony tends to show that Fleming made an unjust scale of the logs. He is not to be considered as a supervisor of the scale, mutually agreed upon by the parties, and whose judgment should bind the parties as to quantity. Taking the testimony of McKay and the

other witness Kane, we do not think it should destroy the effect of Fleming's scale.   It is admitted that Fleming was a competent scaler, and the proofs show that the monthly reports were made as required by the contract; and the proofs also show that he made no mistakes in scaling sound, straight logs.   The thing complained of by McKay and Kane is that in scaling defective logs he overestimated the quantity and did not make a sufficient deduction for the defects of the logs.   This is clearly a matter of judgment, as to which two men of equal competency and honesty might disagree.   The witness Kane says: "The matter of deduction to be made on a scale of a defective log is purely a matter of judgment of the scaler."

The contract having provided for a scaler to whose judgment these matters were to be submitted in the first instance, and whose judgment, unless clearly impeached, should bind the parties, his judgment must bind the parties, unless it be shown by impartial tests that his judgment was warped by prejudice, or that by reason of neglect or carelessness he failed to exercise an honest judgment in the matter intrusted to him.   We do not think the evidence of the defendant was sufficient to justify the court in rejecting the scale made by Fleming as to any logs which were not in fact culls.

As to the other objection made to the scale made by Fleming, that he scaled culls which should not have been scaled at all, we are not so clear that the evidence does not justify the learned circuit judge in holding that Fleming had scaled 663 logs, measuring 98,120 feet, which should not have been scaled at all under the contract, and were in fact worthless culls.   The contract provided that defendant should take "all logs that scaled one-half merchantable," and by fair inference the defendant was not required to take logs not coming up to that scale.   Many of the witnesses besides McKay and Kane testified that there were a considerable

number of logs put in by the plaintiff that were entirely
worthless, and which should have been rejected as culls.
Upon this question we do not feel justified in reversing the
finding of the circuit court.   We think no injustice will be
done to the plaintiff, under the evidence, in sustaining the
finding of the circuit court as to the number and quantity
of the logs rejected as worthless,— at all events as not
coming up to the standard fixed in the contract, viz., one-
half merchantable.   If the plaintiff put in logs which he
was not authorized to do under the contract, and mixed
them with those which the defendant was bound to accept,
he would have no claim on the defendant for their value, if
they had any value, simply because the defendant did not
separate them from those it was required to accept and pay
for.

On the whole evidence, we think the learned circuit court
should have found that the plaintiff put in, under the con-
tract, the quantity found by the scaler Fleming, less the
2,000 feet mistakes in footing, and the 98,120 feet of culls,
viz., 1,750,520 feet.

The only other material question is the amount which the
defendant ought to pay for that quantity.   A careful read-
ing of the evidence leaves a strong impression that a con-
siderable portion of the logs put in by the plaintiff and
received by the defendant were not " good, sound, merchant-
able logs," within the meaning of those words in the con-
tract, and, as a consequence, he was not entitled to receive
eight dollars per M. for all of them.   This question the
learned referee before whom the action was tried expressly
declares he does not pass upon; and in determining it, there-
fore, upon the evidence, we are not required to reverse any
finding made by such referee.

Upon the whole evidence it is impossible to say, with any
great degree of exactitude, what part should be paid for at
the rate of eight dollars per M., and what part at a less

Early vs. The Chippewa Logging Co.

rate. We have concluded to adopt, in part, the finding of the learned circuit judge upon this question, and allow the plaintiff at the rate of eight dollars per M. for two thirds of the amount he found the plaintiff was entitled to receive pay for, and to allow five dollars per M. for the other third of such amount, as well as for the amount disallowed by the learned circuit judge other than the culls. We are conscious that this method of adjusting the rights of the parties in this case is not based upon any very clear and certain testimony, but is the result of the impression made from the whole evidence. If this determination of the matter works any injustice to either party, it must be attributed to the inherent difficulty of ascertaining the exact rights of parties depending upon a contract very vague and indefinite in its terms and upon the conflicting testimony of the witnesses of the respective parties upon the subject of the quality and value of the logs in question. But as a court or jury must in all cases of doubtful and conflicting evidence, as well as in cases when the evidence is clear and certain, still render a certain verdict or finding, we have determined to make the finding in this case certain upon the basis above stated.

Upon the whole evidence we are well satisfied of two things: *First*, that the plaintiff was not entitled, under his contract, to demand of the defendant eight dollars per M. for all the logs put in by him and received by the defendant; and, *second*, that the quantity of the logs for which he is entitled to pay at some price is the amount fixed by the scale of Fleming, deducting 2,000 feet, mistake in footing, and 98,120 feet for logs rejected as culls. Being satisfied upon these points, we have substantially adopted the finding of the learned circuit judge as to what portion of the logs should be paid for at the rate of eight dollars per M., and what part at a less sum, viz., five dollars. Upon the basis we have adopted the plaintiff is

entitled to recover for the logs as follows:    The whole number of logs put in by the plaintiff was 1,848,640 feet.    From this amount deduct 98,120 feet of culls, for which he is entitled to no pay, and it leaves 1,750,520 feet for which he is entitled to pay.    From this amount we deduct fifteen per cent., which was rejected by the learned circuit judge, and, putting it in the second or proven class of logs, viz., 262,578 feet, deducting this amount from the 1,750,520, there remains 1,487,942.    For two thirds of this amount the plaintiff is entitled to recover at the rate of eight dollars per M. feet, viz., 991,961 feet; and for the other one third, 495,981 feet, and for the fifteen per cent., 262.578 feet, making together 758,559 feet, he is entitled to recover at the rate of five dollars per M. feet.    In addition, the plaintiff is entitled to recover three cents per M. on the whole amount for scaler's fees, under the contract, $52.57.

The amount which the plaintiff is entitled to recover of the defendant for the logs, under this adjustment of the rights of the parties, is as follows:

| | |
|---|---|
| 991,961 feet at $8 per M. | $7,935 68 |
| 758,559 feet at $5 per M. | 3,792 79 |
| For scaling | 52 57 |
| | $11,780 98 |
| Amount paid by defendant before suit | 7,375 00 |
| | $4,405 98 |

The sum of $4,405.98 remains due to the plaintiff, upon one half of which he is to receive interest at seven per cent. from September 1, 1883, and upon the other half from October 1, 1883.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to render judgment in favor of the plaintiff for the sum of $4,405.98, with interest on one half thereof from September 1, 1883, and upon the other half from October 1, 1883, at the rate of seven per cent. per annum.