106     SUPREME COURT OF WISCONSIN.     [105

Peterson and another vs. South Shore Lumber Co.

PETERSON and another, Respondents, vs. SOUTH SHORE LUM-
BER COMPANY, Appellant.

*November 24—December 15, 1899.*

*Logs and lumber: Contracts: Delivery: Scale: Evidence: Instructions to
jury.*

1. Under a contract whereby plaintiffs' assignors were bound to deliver
all of certain logs in the mill boom of defendant as soon as practi-
cable, to be paid for on the basis of a scale made on the mill deck
of its mill, it is *held* that all logs traced into the mill boom of de-
fendant must be regarded as in its possession and control, that, if
any such logs so traced failed to get onto the mill deck, plaintiffs
were entitled to prove the facts and recover for them, and that
such proof would not necessarily impeach the scale on the mill
deck.

2. In such case it is not error to admit the scale of such logs made in
the woods, in connection with other evidence, as tending to show
the amount of logs which got into the mill boom.

3. In such case it was not error to instruct the jury, in effect, that logs
lost before delivery into the mill boom, through no negligence on
the part of the defendant, were plaintiffs' loss, and if no logs were
lost, and defendant accounted for all logs delivered in the mill
boom, there was no cause of action.

4. An instruction, requested by defendant, to the effect that, there
being no sufficient evidence to impeach the scale on the mill deck,
made by the scalers selected by the parties, their scale must govern
as to the amount of logs delivered, while correct in so far as it
stated that the evidence as to the amount of logs delivered in the
mill boom was insufficient to impeach the mill-deck scale, is *held*
incorrect, in that it required the jury to find that the mill-deck
scale must govern as to the amount of logs delivered in the mill
boom.

5. Where a contract provided that logs were to be delivered *as soon
as practicable*, but that, if from 25,000 to 50,000 feet of the logs
were left in the river, it would not bar settlement for all logs de-
livered in the mill boom, an instruction that the jury were to de-
termine whether the time in which delivery of the logs should be
made was not to rest to some extent, and perhaps largely, in the
judgment of plaintiffs' assignors, as to what measures they would
take to run the logs, is erroneous, in that it authorized the jury to

substitute the discretion of plaintiffs' assignors as to the time of delivery; and the error was not cured by the further charge that if the jury found that all reasonable diligence was used to get the logs out as soon as practicable, then plaintiffs were not liable, as a matter of law, for the deterioration of the logs by reason of the delay.

APPEAL from a judgment of the circuit court for Ashland county: W. C. SILVERTHORN, Judge. *Reversed.*

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *W. M. Tomkins.*

For the respondents there was a brief by *Gleason & Sleight*, and oral argument by *Richard Sleight.*

CASSODAY, C. J. This is an action to recover an alleged balance due for logs sold and delivered by Peter Nelson & Co. to the defendant under and by virtue of a written agreement made by them May 4, 1896, wherein and whereby Peter Nelson & Co. agreed, in effect, to sell and transfer to the defendant all the pine saw logs by them cut during the logging season of 1895–96, and then banked or in Fish creek, and cut from the lands therein described, and marked as described, and estimated at 2,600,000 feet, log scale; and the defendant agreed to pay $5 per thousand feet, log scale, for all Norway logs, and $6.25 per thousand feet, log scale, for all white pine saw logs; such "scale to be made on the mill deck of the mill " of the defendant at Washburn, by a scaler to be chosen by the district scaler of that district; such logs to be delivered by Peter Nelson & Co. "in the mill boom" of the defendant at Washburn "as soon as practicable." Two thousand five hundred dollars was paid in cash, or its equivalent, at the time of signing the contract; $5,000 was to be paid May 15, 1896, in the manner prescribed; and the balance in one, two, three, four, and five months, as therein stated; "settlement to be made as soon as all logs are delivered in the mill boom." The contract also con-

tained this clause: "It is agreed by both parties that, if there is twenty-five M. to fifty M. feet left in the river, that will not bar settlement for all logs delivered in the mill boom." Thereupon, and before the commencement of this action, Peter Nelson & Co. duly assigned such contract, and the balance due thereon, to the plaintiffs.

Afterwards, and on November 30, 1897, the plaintiffs commenced this action to recover such balance, and claimed judgment for $6,257.70. The defendant answered by way of admissions, denials, and counter allegations, and, among other things, claimed that Peter Nelson & Co. had not delivered as many logs as claimed by them into 1,517, or 318,840 feet, amounting to $2,027.04, and, among other things, set up four counterclaims,— the first for $2,500, for failure to deliver the logs in the defendant's boom as soon as practicable; the second, for $300, overpayment by the defendant to Peter Nelson & Co.; third, $125.72, for taxes on the logs for 1896, which the defendant paid at the request of Peter Nelson & Co.; and, fourth, for $3,628.19, which the defendant was compelled to pay in order to discharge liens for labor, etc., on the logs. The plaintiffs replied to the defendant's allegations of each of the several counterclaims by denying the same. At the close of the trial the jury returned a general verdict in favor of the plaintiffs, and assessed their damages at $1,568.85. From the judgment entered thereon the defendant brings this appeal.

As indicated, the assignors of the plaintiffs were, by the contract, bound to deliver all the logs "in the mill boom" of the defendant at Washburn "as soon as practicable." They were not only responsible for any unnecessary delay, but for all logs which they failed to deliver into "the mill boom." It was not enough that they deliver the logs into the boom limits,— several miles above,— or at the sorting grounds, but their evidence should trace the logs into "the mill boom." All logs so traced into "the mill boom" must

be regarded as in the possession and control of the defendant. The defendant, therefore, must be regarded as responsible for all of such logs which got into "the mill boom," whether scaled "on the mill deck" of the defendant's mill at Washburn or not. Under the contract, the scaler agreed upon was not to scale the logs "in the mill boom," but "on the mill deck." The only scale such scaler claims to have made was made "on the mill deck," and there is no pretense that he made any other scale. If any of such logs were traced to the mill boom which never got onto the mill deck, the plaintiffs are entitled to prove the facts, and recover pay for them. Such proof would not necessarily impeach the scale on the mill deck. The woods scale would seem to be competent evidence, in connection with other evidence, as tending to prove the number and amount of logs which got into the mill boom, but it did not follow that all such logs were scaled by the scaler "on the mill deck." Of course, the woods scale of itself would not establish the fact that all the logs scaled in the woods got into the mill boom. As they were necessarily mingled with other logs, they would have to be traced by the mark upon them. We must hold that there was no error in admitting in evidence the scale made in the woods. It follows, from what has been said, that there was no error in charging the jury to the effect that, if any logs were lost, before they were delivered into the mill boom, through no negligence on the part of the defendant, it was the loss of the plaintiffs; and that, if there were no logs so lost, and the defendant accounted for all logs delivered "in the mill boom," then their verdict should be, No cause of action.

Exception is taken because the court refused to charge the jury that "there is not sufficient evidence in this case to impeach the scale made by the parties agreed upon, and their scale must govern *as to the amount of logs delivered.*" The instruction so requested was undoubtedly correct in so

far as it stated that the evidence was insufficient to impeach the mill-deck scale. The plaintiffs repeatedly disclaimed any purpose to impeach that scale, and the court finally admitted the evidence referred to on the ground that it did not impeach that scale. The infirmity of the instruction so requested consists in the fact that it required the jury to find that the mill-deck "scale must govern as to the amount of logs delivered" in the mill boom, whereas there may have been numerous logs delivered in the mill boom which were never scaled upon the mill deck. The refusal of such instruction was not error. The rule in this state is settled that, "where the logs sold are scaled by a person mutually agreed upon, his estimate of the quantity and of the deductions to be made for defects is binding upon the parties, unless impeached for fraud, mistake, prejudice, or neglect." *Early v. Chippewa L. Co.* 68 Wis. 112. The court, in effect, so charged the jury, and the exception to the same must be overruled.

Exception is taken because, after calling attention to that clause of the contract wherein it was agreed that, if there should be from 25,000 to 50,000 feet of the logs left in the river, that would "not bar *settlement* for all logs delivered in the mill boom," the court charged the jury to the effect that it was for them to say whether, by such clause in the contract, the parties contemplated "that the *time* in which the delivery of the logs should be made was not to rest to some extent, and perhaps largely, in the judgment" of Peter Nelson & Co. as to what measures they would take to run the logs,— whether they would attempt to run the logs at the stage of water then existing, or first attempt to improve the river. The clause referred to, in our judgment, had no reference to the time when the logs were to be delivered in the mill boom, but simply that all logs so delivered should be settled for, even if there should remain from 25,000 to 50,000 feet back in the river. Another clause of

the contract expressly required that the logs should all be delivered by Peter Nelson & Co. in the mill boom of the defendant at Washburn, "as soon as practicable." The portion of the charge so given authorized the jury to substitute the discretion of Peter Nelson & Co. as to the time of such delivery, and was clearly misleading and erroneous. True, such portion of the charge was followed by a further charge to the effect that, if the jury found that Peter Nelson & Co. "used all reasonable diligence to get the logs out . . . as soon as practicable," then the plaintiffs were not liable, as a matter of law, for the deterioration of the logs by reason of the delay. But that did not cure the prior erroneous charge. *Imhoff v. C. & M. R. Co.* 20 Wis. 344; *McCabe v. Hammond*, 34 Wis. 593; *Little v. Superior R. T. R. Co.* 88 Wis. 408.

We find no other exception calling for consideration.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.